UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| US BANK NATIONAL ASSOCIATION,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>FIDELITY NATIONAL TITLE INSURANCE COMPANY,<br><br>　　　　　　　　　　　　　Defendant. | Case No. 2:19-cv-00970-KJD-BNW<br><br>AMENDED ORDER |

Presently before the Court is Defendant's Motion to Dismiss (#30). Plaintiff responded in opposition (#31) to which Defendants replied (#32).

**I. Summary**

This action arises out of the foreclosure of a homeowner's association ("HOA") lien on a residential property in Las Vegas, Nevada. Plaintiff ("U.S. Bank") brings this action against the Defendant ("Fidelity") for failure to provide coverage for a claim under the insurance contract. Specifically, U.S. Bank brings claims for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, deceptive trade practices, and unfair claims practices. The Court finds that one of the endorsements contained in the Policy covers the loss, but the other two endorsements do not provide coverage. Therefore, the Court will grant in part, and deny in part, the Defendant's motion.

**II. Factual and Procedural Background**

    **A. The Property, HOA, and CC&Rs**

The Court takes the allegations of the complaint as true, as it must, on a motion to dismiss.[1] Non-party borrowers, Randal and Michelle Deshazer borrowed $300,000.00 (the "Loan") from First Franklin, a division of National City Bank of Indiana in July 2005 to purchase a home. (#27, at 14). The home (the "Property") is located at 1308 Premier Court, Las Vegas, Nevada 89117 and is part of the Peccole Ranch Community Association ("HOA"). (Id. at 13). The Property is subject to the HOA's conditions, covenants, and restrictions (CC&R's) which were recorded on August 27, 1990. Id. The CC&Rs obligates each unit owner to pay annual assessments, special assessment, and maintenance charges and they also create a lien on the unit if those obligations go unmet. Id. The HOA may foreclose on the lien in accordance with Nevada law. Id.

    **B. Deed of Trust and the Policy**

The $300,000.00 loan from First Franklin was secured by a deed of trust and recorded against the Borrower's Property on July 18, 2005. (Id. at 14). This deed of trust was subsequently assigned to U.S. Bank. Id.

As part of the loan, Fidelity and First Franklin signed a lender's title insurance policy (the "Policy"). Where there is coverage, the Policy requires Fidelity to indemnify U.S. Bank, if necessary, and to provide defense to any adverse claims of title. The Policy includes three parts: (1) Schedule A, which describes the title insured; (2) Schedule B, which describes the exceptions and exclusions to insurance; and (3) four endorsements, which provide coverage not otherwise available under the body of the Policy. (#27-1).

Because none of the parties question the authenticity of the Title Insurance Policy cited in the briefing, the Court may consider the content of the insurance policy without converting the motion to dismiss into a motion for summary judgment. Patel v. Am. Nat'l Prpty & Cas. Co., 367 F.Supp.3d 1186, 1191 (D. Nev. 2019). The first paragraph of the Policy states:

---

[1] The Court also takes judicial notice of the documents attached to the first amended complaint, particularly the title insurance policy and endorsements.

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of: [nine enumerated risks].

(#30-2, at 1). The "Exclusions From Coverage" section goes on to say that:

> The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of: Defects, liens, encumbrances, adverse claims or other matters: attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material[.]

(Id. at 2). The Date of Policy was July 18, 2005. Fidelity asserts that because the HOA lien was a post-Date of Policy matter, there is no coverage available. (#30, at 8).

**C. Endorsements**

The Policy also contains four endorsements. The two endorsements relevant to this action are: (1) CLTA 115.2/ALTA 5; and (2) CLTA 100. The CLTA 115.2/ALTA 5 provides coverage "against loss or damage sustained by reason of: . . . [t]he priority of any lien for charges and assessments at Date of Policy in favor of any association of homeowners which are provided for in any document referred to in Schedule B over the lien of any insured mortgage identified in Schedule A. (#27-1).

CLTA 100 provides coverage for two particular types of loss relevant to this matter. CLTA 100(1)(a) covers a loss sustained "by reason of . . . [t]he existence of … [c]ovenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired[.]" Id. CLTA 100(2)(a) covers a loss sustained "by reason of…[a]ny future violations on the land of any covenants, conditions, or restrictions occurring prior to acquisition of title to the estate or interest referred to in Schedule A by the insured, provided such violations result in impairment or loss of the lien of the mortgage referred to in Schedule A[.]" Id.

**D. Trade Usage and Understanding**

U.S. Bank also submitted the following guides (as exhibits to the FAC) to illustrate how the endorsements at issue in this case are understood by policy underwriters: (1) Fidelity's Endorsement Guide (#27-2); (2) Chicago Title's Endorsement Manual (#27-3); (3) Fidelity's Endorsement Manual (#27-4); (4) James L. Gosdin's writing "The 2006 ALTA Forms" (#27-5); (5) Stewart Title's 1991 Bulletin (#27-6); Stewart Title's 1993 Bulletin (#27-7); (6) Land America's Underwriting Manual (#27-8); and Stewart Title's 2014 Bulletin (#27-9). These exhibits are mostly guidelines for underwriters to understand the scope and effect of the endorsements. James L. Gosdin, the author of "The 2006 ALTA Forms" is the former ALTA chair, and he explains the scope and intent of the ALTA endorsements. (#27, at 5).

Fidelity's Endorsement Guide states the CLTA 100 "[p]rovides comprehensive coverage for insured ALTA lender against loss by reason of present or future CC&Rs violations[.]" (#27-2). It clarifies that "[t]here are no CC&Rs under which the lien of the insured mortgage can be cut off, subordinated or impaired." Id. The Underwriting Manual from Land America tells underwriters to "review all covenants, conditions and restriction… to determine if there is language which result in forfeiture, reversion or other impairment." (#27-8). It also explains that "other impairment" "includes a provision permitting a homeowners or civic association to levy an assessment, secured by a lien with priority over the insured deed of trust." Id.

Chicago Title's Endorsement Manual explains that ALTA 5-06 "insures against loss from lack of priority of the mortgage lien over the lien for homeowners' association assessments. (#27-3, at 18). This endorsement "differs" from the ALTA 5.1-06 which does not cover "prior over future assessments" and instead "only covers unpaid assessments at date of policy." Id.

Fidelity's Endorsement Manual is similar. It says "[t]he ALTA 5-06 insures against loss from lack of priority of the mortgage lien over the lien for homeowners' association assessments. (#27-4, at 39). "The ALTA 5.1-06 differs in that there is no insurance of priority over future assessments… instead it only covers unpaid assessments at date of policy." Id. Further, it explains that the ALTA 5-06 "coverage may be given only if state law or the covenants and restrictions, which provide the lien for assessments, also provide that the lien of the mortgage

you are insuring is prior to the assessment lien." (Id. at 41).

Gosdin explains that in 2006, the 1992 versions of the ALTA 5 and ALTA 9 were modified. (ECF No. 25-5 at 24-25.) The ALTA 5 became the ALTA 5-06 (with the ALTA 5.1 becoming the ALTA 5.1-06) (#27-5). Of the ALTA 5-06 he says:

> While ALTA Endorsements 4.1-06 (Condominium) and 5.1-06 (Planned Unit Development) do not insure priority of the lien of the Insured Mortgage over future assessments by property owner's associations, ALTA Endorsement 9-06 (Restrictions, Encroachments, Minerals) does insure such priority. Optional ALTA Endorsements 4-06 (Condominiums) and 5-06 (Planned Unit Development) also insure priority of the lien of the Insured Mortgage over future assessments by property owner's associations.

(Id. at 21).

### E. NRS Chapter 116

The Uniform Law Commission promulgated the Uniform Common Interest Ownership Act ("UCIOA") in 1982. (#27 at 7). This included a provision that afforded HOAs' CC&Rs a "super-priority" lien for unpaid assessments that permitted an HOA's assessment lien to take priority over a first deed of trust. In 1992, the Nevada legislature adopted the 1982 version of UCIOA, codifying it in NRS Chapter 116. Id. NRS 116.3116 is the statute that governs liens against units for assessments.

NRS § 116.3116(1) established that an HOA has a lien on any unit for any assessment levied against that unit from the time the assessment becomes due. The HOA lien is "prior to all other liens and encumbrances on a unit" except for certain carveouts, including "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." § 116.3116(2)(b). However, the HOA lien is prior even to first deed of trust to the extent of the assessments for common expenses based on the periodic budget adopted by the association. Id.[2]

In September 2014, the Nevada Supreme Court ruled that NRS § 116.3116 gives an HOA "a superpriority lien on an individual homeowner's property for up to nine months of unpaid HOA

---

[2] NRS § 116.3116 has since been amended, and the provision permitting an HOA lien to subjugate a first deed of trust for unpaid assessments has been removed.

- 5 -

dues." SFR Invs. Pool 1 v. U.S. Bank, 334 P.3d 408, 409 (Nev. 2014). This case resolved the split between federal and state courts as to whether NRS § 116.3116 established a "true priority lien"– that is, a lien which when foreclosed upon would extinguish all subpriority liens, including a first deed of trust– by finding that "the super-priority piece of the HOA lien carries true priority over a first deed of trust." Id. at 412-13.

### F. HOA Lien and Foreclosure

Borrowers stopped paying assessments to the HOA in 2009 and on May 12, 2009, a Notice of Claim of Delinquent Assessment Lien ("Delinquency Notice") was recorded against the Property by Nevada Association Services ("NAS"). (#27, at 18). The Delinquency Notice stated that "[i]n accordance with Nevada Revised Statutes and [the CC&Rs]," the HOA "has a lien on the [Property]." Id. On June 20, 2009, NAS recorded a Notice of Default and Election to Sell Under Homeowners Association Lien against the Property. The Notice stated that it was being given pursuant to the Delinquency Notice and declared a breach under the CC&Rs. Id. On June 21, 2012, NAS recorded a Notice of Foreclosure sale against the property, and it referenced the Delinquency Notice, which cited both the NRS and the HOA's CC&Rs. Id. A non-judicial foreclosure sale occurred on September 19, 2012, where Platinum Realty & Holdings, LLC purchased the Property from the HOA for $6,000.00 Id.

The HOA buyer, Platinum Realty, then conveyed the Property to SFR Investments Pool 1, LLC ("SFR") through a Grant, Bargain, Sale Deed recorded on April 5, 2013. Id. On June 25, 2015, after Fidelity denied U.S. Bank's claim for coverage– U.S. Bank filed a complaint for quiet title and declaratory relief against the HOA, NAS, and SFR, among others, in the Eighth Judicial District Court in Clark County, Nevada. Id. On March 20, 2018, the Court granted U.S. Bank's motion for summary judgment and entered an order quieting title in favor of U.S. Bank, because an amount sufficient to satisfy the super-priority portion of the lien had been tendered before the sale. Id. SFR appealed to the Nevada Supreme Court, where the Court reversed and remanded for further proceedings on March 25, 2020. Id. Ultimately, SFR and U.S. Bank reached a settlement, and U.S. Bank reconveyed its Deed of Trust. Id.

### G. U.S. Bank's Claim to Fidelity

On May 27, 2015, U.S. Bank provided written notice to Fidelity that SFR was claiming an interest in the Property superior to its Deed of Trust. (#27-20). The claim requested both indemnity and defense from Fidelity and cited the Nevada Supreme Court's decision in SFR Investments, which held that an HOA lien could possibly extinguish a lender's Deed of Trust. Id. On June 9, 2015, Fidelity denied the request for coverage. (#27-21). Fidelity pointed to the Policy, CLTA 100, and CLTA 115.2, and the exclusions from the Policy, asserting that the HOA lien was not recorded until May 12, 2009, and the Date of Policy was July 18, 2005, precluding coverage under the terms of the contract. Id. Fidelity also said the claim was barred due to late notice of the claim. Id.

### H. Procedural History

U.S. Bank Plaintiff initiated this action on June 7, 2019 against Fidelity, claiming Fidelity breached its duty to defend and indemnify U.S. Bank according to the terms of the Policy. Specifically, U.S. Bank brought claims for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, deceptive trade practices, and unfair claims practices. Fidelity brings this present motion to dismiss for failure to state a claim and argues that the insurance claim is barred because the HOA assessment lien arose after the Date of Policy. U.S. Bank opposes this motion and argues it is entitled to coverage because the HOA lien arose upon the recording of the CC&Rs and because the endorsements extend coverage to liens arising after the date of the policy.

### III. Standard for a Motion to Dismiss

Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint does not require "detailed factual allegations," but "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Co. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). All "[f]actual

1  allegations must be enough to raise a right to relief above the speculative level." Twombly, 550
2  U.S. at 555. While the court "must take all of the factual allegations in the complaint as true, we
3  'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 556
4  U.S. at 678 (quoting Twombly, 550 U.S. at 555). "When the claims in a complaint have not
5  crossed the line from conceivable to plausible, the complaint must be dismissed." Hendon v.
6  Geico Ins. Agency, 377 F.Supp.3d 1194, 1196 (D. Nev. 2019).

7    "Generally, a district court may not consider any material beyond the pleadings in ruling
8  on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the
9  complaint may be considered on a motion to dismiss." Hal Roach Studios, Inc. v. Richard Feiner
10 & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Documents whose contents are alleged in a
11 complaint and whose authenticity no party questions, but which are not physically attached to the
12 pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss without converting
13 the motion to dismiss into a motion for summary judgment. Patel, 367 F.Supp.3d at 1191.

**IV. Analysis**

Defendant moves to dismiss the FAC in its entirety for failing to state a claim. The Court first considers whether the three endorsement provisions Plaintiff identifies provide coverage for its loss. Although the Court agrees with Defendant that CLTA 100(2)(a) and ALTA 5(2) do not provide coverage, the Court concludes that CLTA 100(1)(a) covers the loss, and Plaintiff's claims may proceed based on that endorsement. Next, the Court finds that Plaintiff has plausibly pleaded its claims for breach of the implied covenant of good faith and fair dealing and violation of Nevada's Deceptive Trade Practices Act but finds that Plaintiff's claim for violation of NRS § 686A.310 is time-barred. Accordingly, the Court will grant in part, and deny in part, Defendant's motion.

**A. Coverage**

Fidelity argues that U.S. Bank's claims for declaratory judgment and breach of contract must be dismissed because none of the endorsements cover the loss. (#30, at 6). Fidelity argues that CLTA 100(1)(a) only insures against losses sustained by reason of a "covenant, condition, or restriction," "and U.S. Bank's loss was sustained by reason of NRS 106.3116. (Id. at 11). U.S.

1   Bank responded arguing that the CC&Rs and NRS 106.3116 were concurrent causes covered
2   under CLTA 100(1)(a). (#31, at 9). Fidelity also argues that CLTA 100(2)(a) does not provide
3   coverage because it has nothing to do with assessment liens and the violation did not occur "on
4   the land." (#30, at 11-12). U.S. Bank argues this does provide coverage because the HOA lien
5   and CC&Rs assessment obligations are on the land. (#31, at 11). Finally, Fidelity argues that
6   CLTA 115.2 does not extend coverage because the failure to pay assessment fees occurred *after*
7   the date of the policy. (#30, at 12). U.S. Bank argues this endorsement does provide coverage
8   which is evidenced by the industry custom and trade usage. (#31, at 13).

9   "Insurance policies, are, of course, contracts, and they are treated like other contracts."
10  Nautilus Ins. Co. v. Access Med., LLC, 482 P.3d 683, 687 (Nev. 2021) (citation omitted). Under
11  Nevada law, courts are tasked with interpreting insurance policies "broadly," resolving doubts
12  regarding coverage in favor of the policyholder. United Nat'l Ins. Co v. Frontier Ins. Co., 99
13  P.3d 1153, 1156-58 (Nev. 2011). Indeed, "[a]ny ambiguity in an insurance contract must be
14  interpreted against the drafting party and in favor of the insured." Farmers Ins. Grp. v. Stonik,
15  687 P.2d 389, 391 (Nev. 1994).

16  Because "[w]ords derive meaning from usage and context," the Nevada Supreme Court has
17  concluded that "'[a]mbiguity is not required before evidence of trade usage… can be used to
18  ascertain or illuminate' contract terms." Galardi v. Naples Polaris, LLC, 301 P.3d 364, 367 (Nev.
19  2013) (citation omitted). And although "interpretation of an insurance contract is a question of
20  law for the court," Big-D Const. Corp. v. Take it for Granite Too, 917 F. Supp. 2d 1096, 1106
21  (D. Nev. 2013) (citing Powell v. Liberty Mutual Fire Ins. Co., 252 P.3d 668, 672 (Nev. 2011)),
22  "[t]he existence and scope of a usage of trade are to be determined as questions of fact." Galardi,
23  301 P.3d at 367 (quoting Restatement (Second) of Contracts § 222(2) (1981)).

24  **1. CLTA Endorsements**
25  The CLTA endorsement form 100 states in relevant part:

26  > The Company hereby insures the owner of the indebtedness secured
27  > by the insured mortgage against loss which the insured shall sustain
    > by reason of:
28  > 1.  The existence of any of the following:

> (a) Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired:
>
> (b) Present violations on the land of any enforceable covenants, conditions or restrictions…
>
> 2. (a) Any future violations on the land of any covenants, conditions or restrictions occurring prior to an acquisition of title to the estate or interest referred to in Schedule A by the insured, provided such violations result in impairment or loss of the lien of the mortgage referred to in Schedule A, or result in impairment or loss of the title to the estate or interest referred to in Schedule A if the insured shall acquire such title in satisfaction of the indebtedness secured the insured mortgage[.]

The CLTA endorsement form 115.2 states in relevant part:

> The Company insures the insured against loss or damage sustained by reason of:
>
> 2. The priority of a lien for charges and assessments at Date of Policy in favor of any association of homeowners which are provided for in any document referred to in Schedule B over the lien of any insured mortgage identified in Schedule A.

(#27-1). The Court will analyze each endorsement in turn.

### a. CLTA 100(1)(a)

Defendant argues CLTA 100(1)(a) does not cover Plaintiff's loss because "[o]nly the statute created the super-priority status of the foreclosed lien[;]" therefore, its deed of trust was not cut off "by reason of" the CC&Rs." (ECF No. 30 at 9-10.) Plaintiff disagrees, contending that the "existence" of the CC&Rs was operative in creating the lien that the HOA later foreclosed upon. (ECF No. 31 at 9-10.) Because the CC&Rs authorized the creation of the lien that NRS § 116.3116 permitted to take superiority status over and eventually extinguish the deed of trust, the Court agrees with Plaintiff.

The CC&Rs clearly state that an "Assessment Lien may be enforced by foreclosure of the lien on the defaulting owner's lot by the Association in like manner as a mortgage on real property." (#27-10, at 61). Without the CC&Rs, the HOA could not have levied the assessments that later formed the lien. Absent the statute, the super-priority portion of the HOA lien authorized by the CC&Rs would not have taken priority over the prior recorded first deed of trust. The CC&Rs and the statute therefore operated together to create the conditions which

- 10 -

caused U.S. Bank's loss.

Additionally, when the HOA levied the lien against the Property for failure to pay assessments, the HOA explicitly stated it was authorized to do so under both the CC&Rs and the Nevada Revised Statutes. (#27, at 18). Further, the plain language of the statute at that time permitted an HOA lien to assume priority over "all other liens and encumbrances on a unit," including first deeds of trust for unpaid assessments. NRS § 116.3116(2). Regardless of whether anyone reasonably expected that NRS § 116.3116(2) would permit the first deed of trust to be extinguished, as the Nevada Supreme Court found in 2014, the risk of subordination to the HOA lien is clear from the plain language of the statute. And upon reviewing the CC&Rs, which expressly permit the HOA to levy assessments, impose a lien for unpaid assessments, and foreclose on the lien to satisfy the balance, a title insurer would know or have reason to know that the CC&Rs' lien provisions could jeopardize the priority or full value of a first deed of trust.

The trade usage evidence also supports the idea that coverage exists here. Fidelity National Title's Endorsement Guide states the CLTA 100 "[p]rovides comprehensive coverage for insured ALTA lender against loss by reason of present or future CC&Rs violations[.]" (#27-2). The endorsement ensures "[t]here are no CC&Rs under which the lien of the insured mortgage can be cut off, subordinated or impaired." Id. This further suggests the CLTA 100(1)(a) endorsement covers Plaintiff's loss.

Construing coverage under the Policy broadly and resolving doubts in favor of the policyholder is also required by Nevada law, which also supports the Court's finding for U.S. Bank. See United Nat'l Ins. Co., 99 P.3d at 1156-58. Without the CC&Rs, no assessments would have been levied. Fidelity has not proven that U.S. Bank failed to bring a claim for relief. The delinquent assessments provided grounds for establishing the HOA lien, the foreclosure of which would necessarily subordinate the first deed of trust, per NRS § 116.3116(2). Defendant therefore has not shown that CLTA 100(1)(a) does not provide coverage for Plaintiff's loss as a matter of law. Indeed, the Court rules to the contrary—CLTA 100(1)(a) could cover the Plaintiff's loss. See Wells Fargo Bank, N.A. v. Fidelity Nat'l Title Ins. Co., No. 3:19-cv-00241-MMD-CSD, Doc. No. 52 (D. Nev. September 20, 2022). Plaintiff has stated a claim that is

plausible on its face and therefore, Defendant's motion to dismiss the claims based on CLTA 100(1)(a) is denied.

### b. CLTA 100(2)(a)

Fidelity also argues that CLTA 100(2)(a) does not provide coverage and that this claim should be dismissed because an HOA lien is not a violation "on the land." (#30, at 12). The Court agrees. The Court is convinced by Fidelity's argument that "[n]onpayment of a debt… unlike a physical change to the property itself, does not occur in any particular place or location (e.g., "on the land" versus "not on the land")." Id.; Wells Fargo, Doc. No. 52 at 18. Accordingly, CLTA 100(2)(a) does not cover U.S. Bank's loss and this claim is dismissed.

### 3. CLTA 115.2

U.S. Bank also claims that CLTA 115.2 extends coverage for their loss. Fidelity argues it cannot because the relevant part of the endorsement states that "[t]he Company insures the insured against loss or damage sustained by reason of: . . . 2. The priority of any lien for charges and assessments at Date of Policy in favor of any association of homeowners which are provided for in any document referred to in Schedule B over the lien of any insured mortgage identified in Schedule A." (#27-1). U.S. Bank relies on industry custom and trade usage to argue that CLTA 115.2 is the same as ALTA 5/5-06 and this covers the loss. (#31, at 13).

The Court finds that this endorsement covers any charges or assessments only when they are due and owing at the Date of Policy. CLTA 115.2 would provide coverage if a borrower started missing payments for HOA dues three months before the Date of Policy, and if the borrower continued to miss payments -- then those payments became a super-priority lien six months after the Date of Policy. However, this is not what happened here. No HOA assessment lien existed at the Date of Policy in 2005. Borrowers did not stop paying their HOA fees until 2009.

The Court finds there is no ambiguity here and thus there is no need to consider the trade usage evidence. The endorsement is clear– it does not cover anything that arises after the Date of Policy. Therefore, CLTA 115.2 does not provide coverage and this claim is dismissed.

### B. Implied Covenant of Good Faith and Fair Dealing

Defendant moves to dismiss this claim because, it argues, there is no coverage for Plaintiff's

loss under any of the cited endorsements. Plaintiff counters that Defendant's motion should be denied as to this claim because there is coverage under the cited endorsements. The Court agrees with Plaintiff. Because the Court finds that there is coverage under Policy endorsement CLTA 100(1)(a) for the loss, the motion to dismiss this claim is denied.

**C.  Deceptive Trade Practices under NRS § 41.600 and § 598.0915**

Fidelity argues U.S. Bank has failed to state a claim for relief because U.S. Bank does not have proper standing and because the claim is barred by the statute of limitations. (#30, at 14-15). U.S. Bank responds, arguing that Fidelity relies on inapplicable case law and that the claim is not time-barred because it was not aware of the alleged continuing misrepresentations until it discovered the internal guides and manuals through discovery. (#31, at 18-19).

The Court agrees with U.S. Bank. As U.S. Bank points out, "[t]he Policy itself acknowledges it is for the benefit of original Deed of Trust holder and 'its successors and/or assigns.'" (#31, at 18). The deed of trust also states that it "can be sold one or more times without prior notice." Id. Because U.S. Bank has asserted facts that confer standing, the Court denies the motion to dismiss this claim based on standing.

Fidelity also asserts that this claim is time-barred by the statute of limitations which is four years and that any misrepresentations would have needed to be made prior to the Date of Policy. (#30, at 15). However, the statute states that a claim "accrue[s] when the aggrieved party discovers, or by exercise of due diligence should have discovered, the facts constituting the deceptive trade practice." NRS § 11.90(2)(b). U.S. Bank has alleged it was not aware of the alleged misrepresentations until it discovered the internal guides explaining the endorsements should provide coverage. (#31, at 19). At the minimum, U.S. Bank should have discovered the facts constituting the deceptive trade practice on the date Fidelity denied the claims on June 9, 2015. U.S. Bank's complaint was filed on June 7, 2019. Therefore, the complaint was filed timely and the motion to dismiss the Deceptive Trade Practices Act claim is denied.

**D. Unfair Claims Practices under NRS § 686A.310**

Fidelity argues that a claim arising under § 686A.310 is time-barred. "A claim based on violation of Nev. Rev. Stat. § 686A.310 must be filed within three years of the triggering event."

1  Williams v. Travelers Home & Marine Ins. Co., 740 F. App'x 134 (9th Cir. 2018) (citing NRS §
2  11.190(3)(a)). The limitations period begins to run when the insurer formally denies the claim.
3  See id. It is undisputed that Defendant formally denied Plaintiff's claim on June 9, 2015. Plaintiff
4  waited more than three years to file its unfair claim practices claim. Therefore, Defendant's
5  motion to dismiss the unfair claims practices claims is granted. See Wells Fargo Bank, N.A. v.
6  Fidelity Nat'l Title Ins. Co., No. 3:19-cv-00241-MMD-CSD, Doc. No. 52 (D. Nev. September
7  20, 2022) (finding claim time barred because it was filed more than three years after formal
8  denial of claim).

**E. Leave to Amend**

Fidelity also asks the Court to dismiss U.S. Bank's First Amended Complaint without leave to amend. (#30, at 17). Fidelity asserts that "[b]ecause the Policy unambiguously does not provide coverage for a post-Date of Policy claim, no amount of additional pleading can operate to change the ultimate determination of a motion to dismiss." Id. U.S. Bank argues in response that "[l]eave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment." (#31, at 21).

The Court dismisses U.S. Bank's claims to the extent they are based on CLTA 100(2)(a) and CLTA 115.2 because it do not cover the loss. Thus, the Court declines to grant U.S. Bank leave to amend its claims to the extent they are based on CLTA 100(2)(a) and CLTA 115.2 because U.S. Bank has already amended this action once, and the Court has considered the trade usage and industry standard and has still determined they do not cover the loss. Accordingly, leave to amend is denied.

///
///
///
///
///
///
///

**IV. Conclusion**

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (#30) is **GRANTED in part and DENIED in part**;

**IT IS FURTHER ORDERED** that the claims based on endorsement CLTA 100(2)(a) and CLTA 115.2, and NRS § 686A.310 are **DISMISSED**.

Dated this 14th day of April, 2023.

_____
Kent J. Dawson
United States District Judge